UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-20783-CR-King/Garber

UNITED STATES OF AMERICA,

v.

KEITH JOSEPH LANZON,

    Defendant.
_____/

## OMNIBUS REPORT AND RECOMMENDATION

THIS CAUSE is before the Court by Order of Reference from United States District Judge James Lawrence King. Pursuant to such reference the Court has received the defendant Lanzon's (1) Motion to Suppress Fruits of Warrantless Search (DE 26), and (2) Motion to Suppress Statements (DE 31), to which the government has responded in opposition and defendant has replied.

A hearing was held on said motions, as well as other pending motions that will be addressed by Order, on June 13th and 14th, 2007. The defendant appeared with his attorney of record, Roy Black, Esquire. The government was represented by Assistant United States Attorney O. Benton Curtis III.

## FACTUAL BACKGROUND

Detective George Clifton (Clifton), a law enforcement officer with the Miami-Dade Police Department with twenty-one years experience, on the relevant dates in this cause was assigned to the Sexual Crimes Bureau, the Internet Child Pornography Unit, where he had been working for the past three years. This Unit investigated *inter alia* solicitation of sex or pornography involving

minors. He testified that he was "trying to get sexual offenders to have sex with children."[1] On September 8th, 2005, he was performing such duties. In so doing, he advised he would enter a chat room and that he would often present himself as a little girl or boy and would wait to be contacted by an adult who would either send him pornography or attempt to engage in sexual activity with him/her.

On that date Clifton was on line in the Internet Program America Online and was visiting Florida Couples, a "swinger's chat room."[2] Clifton testified that the use of the word "swingers" meant "people [who] swap and have sex with other people."[3] While on line Clifton was contacted by instant message (IM) by a person utilizing the screen name "SLINGERHD," later determined to be the defendant in this cause. Clifton identified himself to SLINGERHD as having a girlfriend with a 14 year old daughter. SLINGERHD asked Clifton, as to the 14 year old girl, if "she play too." Clifton advised SLINGERHD that he "was playing with a 14 year old girl" which meant that he was having sex with her.[4] The defendant was interested in meeting Clifton and the 14 year old girl. Clifton and the defendant gave each other their personal descriptions. Clifton testified that he had three conversations with the defendant: two on September 8th and a third on September 9th. In each instance the defendant initiated the conversations. In these conversations it was agreed that the defendant "would have passionate sex with a 14 year old girl, that he agreed to bring colored condoms, and we agreed that we would meet at the Borders bookstore in Aventura. . .[a]t about

---

[1] Page 11, line 15-16 of transcript of hearing held on June 13, 2007. All references to a transcript hereafter refer to the hearings of June 13 and 14, 2007.

[2] A chat room is a site where internet users are able to have on line conversations.

[3] Pages 22-23, June 13, 2007.

[4] Pages 16-17, June 13, 2007.

12:00 o'clock . . .September 9th."[5] The defendant stated that he would be wearing a blue and yellow striped shirt. In addition to the condoms the defendant was told that the girl liked peppermint. Detective Clifton explained that he mentioned the condoms and candy so that the defendant could not later claim that he was not the person with whom Clifton had the conversation on line.

Thereafter, as planned, and following law enforcement setting up surveillance at the Borders bookstore, Detective Clifton was advised by his supervisor that the defendant had arrived at the Aventura Mall, the location of Borders.

Detective Amaya, a member of the Sexual Crimes Bureau, was part of the surveillance team. He stated that a vehicle driven by the defendant parked three stalls away from his car. It remained there for some time and the defendant had remained inside of the vehicle. Amaya then noticed the defendant's vehicle proceed to drive to a parking lot between Borders and Linens'n Things, where he parked and remained in the vehicle. The defendant then, after remaining in his vehicle, exited and entered a Linens'n Things. After exiting the linen store the defendant entered his vehicle and remained there for 15 to 30 minutes. He ultimately exited his vehicle and entered Borders. The defendant was carrying a computer and placed it near a table where a person (an undercover officer) who was playing the role of Clifton was seated. The defendant approached that person and called him "Tom Tom," a name that Clifton had identified himself as while in the chat room conversing with the defendant. At this point Detective Clifton and Detective Artiaga grabbed the defendant's arm and told him that he was under arrest. After being handcuffed and patted down by the officers the defendant was removed to the outside of the Borders store, where he was again patted down. The second pat-down was, according to Clifton, to determine if the defendant had the condoms on

---

[5]Transcript, page 17, lines 14-21.

his person and none were found. Clifton also took the keys to the defendant's vehicle. At this point the defendant was placed in a police car and driven away from and out of sight of his own vehicle.

Detective Clifton, based on his experience in numerous earlier cases, testified in those cases that in each instance a search of the defendants' vehicles for evidence yielded evidence of the offense. He indicated in this cause that he was "looking for those items in which he agreed that he was going to bring to the scene."[6]

Clifton, Sergeant Irvine and Sergeant Amaya then, using the defendant's keys, opened the vehicle on the driver's side to look for the colored condoms, which they recovered inside of a bag also containing a mint lubricant, located in the driver's side pouch inside of the vehicle. Clifton also recovered a receipt for the purchase of the colored condoms and lubricant which were purchased that same day.

The defendant was transported to the Sexual Crimes Bureau by Clifton and Detective Fitzpatrick and made no statements to the officers. Testimony of the government witnesses indicated that the defendant had not been asked to consent to the search of his vehicle. This point is disputed since an executed Consent to Search the defendant's computer also had the word "vehicle" inserted but was later stricken by Clifton. Clifton admitted that he had asked the defendant for permission to search the vehicle but such permission was denied by the defendant. For reasons set forth herein the Court deems such dispute to be irrelevant in the ultimate determination of the Motions to Suppress.

It is undisputed that the defendant was given his *Miranda* rights after he was placed in an interview room and prior to any questioning. Clifton advised that the defendant was not confused,

---

[6]Transcript, page 32, line 24.

appeared to understand his rights, and executed the *Miranda* form. The defendant stated that "he had done something stupid . . .He did enter a chat room, And he was talking to a guy who was having sex with a 14 year old girl, and that he was curious, but that he would never have had sex with her."[7] The defendant stated that he was bored and got on line. He admitted sending an instant message to one of the people in the chat room that he was visiting on line. The defendant stated that he "talked to a guy who said he was having sex with his girlfriend's 14-year-old daughter."[8]The defendant's statements were not recorded but were memorialized in notes kept by Detective Clifton. Portions of the notes contained quotations of the defendant's statement.

Both Detectives Clifton and Fitzpatrick advised that neither had made any promises to the defendant, never yelled at him, and never told him that everything would be all right if he cooperated. Clifton testified that the tone was conversational in his interview of the defendant. He was told, according to Clifton, that he was going to jail regardless of whether he made a statement or not.

## DISCUSSION

### A. Motion to Suppress Statements

This motion seeks to suppress all statements made by the defendant following his arrest on September 9, 2006. The defendant claims that his interrogation "involved deceit and false assurances intended to induce fear and to force Mr. Lanzon to waive his right to remain silent."[9]

---

[7] Transcript, page 26, lines 11-16.

[8] Transcript, page 54, line 21.

[9] Motion to Suppress Statements, at page 2.

5

The defense claims that the officers lied to him about the effect of his arrest, assuring him that if he cooperated he could go home and avoid jail; if he did not cooperate he would be imprisoned for a long time. Such conduct, the defense has argued, was coercive and intimidating, leading to the defendant's giving his statement.

The Court heard the testimony of Detectives Clifton and Fitzpatrick, both of whom denied the defendant's assertions about coercion and intimidation as the basis for his giving a statement. The Court finds both of said witness to be credible and their testimony, subjected to rigorous cross examination, is believable and consistent. Such testimony stands in this record as unrebutted. Accordingly, the Court finds that the statement given by the defendant, following his receipt of *Miranda*, was given freely and voluntarily and was not the product of coercion, fear, or intimidation. Thus, the defendant's Motion to Suppress Statements should be denied.

### B.  Motion to Suppress Fruits of Warrantless Search

In this motion the defendant claims that the items seized (colored condoms, peppermint personal lubricant, and receipt for the purchase of such items) were illegally seized in the absence of probable cause to conduct such search. At the commencement of the hearing on this motion the Court asked the following of defense counsel: "If in fact, the Court were to find that there was probable cause [to search the vehicle], you would agree, would you not, that a search would have been justified?" Defense counsel responded "Yes."[10] Thus, the probable cause is pivotal in this cause.

The Eleventh Circuit, in a recent case, has held that probable cause "exists when under the totality of the circumstances, there is a **fair probability** that contraband or evidence of a crime will

---

[10] Transcript, at page 7, lines 9-12.

be found in the vehicle." *United States v. Tamari*, 454 F.3d 1259, 1264 (11th Cir. 2006). *Emphasis supplied.* The totality of circumstances in this cause included the following: the defendant had initiated online conversations with "Tom" regarding whether the 14 year old would "play;" the defendant's agreement to meet with "To," and the 14 year old girl at the Borders bookstore at a date and time certain; the defendant's agreement that the three of them would go to a hotel and that the defendant would have sex with the girl while "Tom" watched; the defendant agreed to bring colored condoms and peppermint to the assignation; "Tom" and the defendant gave their physical descriptions and the defendant stated that he would be wearing a yellow and blue striped shirt; the defendant arrived in a vehicle at Borders at the time agreed upon; the defendant remained at the scene for a substantial period of time, entered Linens'Things and exited to return to his car, where he remained for several more minutes; the defendant then entered Borders carrying a laptop computer and he then approached a male and said "Tom, Tom," the name that Detective Clifton said that he would use.

The foregoing occurrences, when considered in view of the decision in *United States v. Tamari*, *supra,* and under the totality of the circumstances, clearly mandates that this Court find that there is "a **fair probability** that contraband or evidence of a crime will be found in the vehicle." *Emphasis supplied.*

The government has also advanced an argument regarding the automobile exception as first announced in *Carroll v. United States*, 267 U.S. 132, 153 (1925). The government also argues that "a car's occupants enjoy a reduced expectation of privacy in their car compared to their home due to the extensive regulation of automobiles." *United States v. Watts*, 329 F.3d 1282, 1285 (11th Cir. 2003).

Due to this Court's finding of probable cause for the search of the defendant's vehicle, which was then under the control of law enforcement, it is not necessary to consider the application of the automobile exception for warrantless searches. Further, the circumstances in this cause would have been sufficient for the issuance of a search warrant. *See, United States v. Ross,* 456 U.S. 798, 809 (1982).

## CONCLUSION AND RECOMMENDATION

For reasons set forth above and based upon the Court's review of the record, and consideration of the submissions and argument of counsel, the undersigned respectfully

RECOMMENDS that the defendant Lanzon's (1) Motion to Suppress Statements, and (2) Motion to Suppress Fruits of Warrantless Search be DENIED.

The parties have ten (10) days from the date of this Omnibus Report and Recommendation within which to file written objections, if any, with United States District Judge James Lawrence King. See 28 U.S.C. §636 (1991). Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir.), cert. denied, 488 U.S. 958 (1988).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 21st day of June, 2007.

                                            BARRY L. GARBER
                                            UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
U.S. District Judge King
Counsel of record

9